UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. TAYLOR,                                    )<br>                                                                    )<br>                    Plaintiff,                              )   Case No. 13 C 4597<br>      v.                                                      )<br>                                                                    )   Judge Manish S. Shah<br>RICKY A. HUGHES, KEVIN R. JOHNSON,  )<br>RUSSELL E. WHITE, JR., KENNETH J. YAKES, )   Magistrate Judge Maria Valdez<br>SHAWN J. PICKETT, RICHARD E. PECK, JR., )<br>THOMAS B. LIEBER, SCOTT M. McWILLIAMS,)   JURY TRIAL DEMANDED<br>YOLANDA R. COLLIER, JOSHUA WEITZMAN, )<br>and CITY OF CHICAGO,                             )<br>                                                                    )<br>                    Defendants.                           )| |

## FIRST AMENDED CIVIL RIGHTS COMPLAINT

Plaintiff, ROBERT A. TAYLOR, by and through his attorney, Irene K. Dymkar, complaining against defendants, RICKY A. HUGHES, KEVIN R. JOHNSON, RUSSELL E. WHITE, JR., KENNETH J. YAKES, SHAWN J. PICKETT, RICHARD E. PECK, JR., THOMAS B. LIEBER, SCOTT M. McWILLIAMS, YOLANDA R. COLLIER, JOSHUA WEITZMAN, and CITY OF CHICAGO, states as follows:

### NATURE OF CLAIM

1.  This action arises under the United States Constitution and the laws of the United States, specifically the Civil Rights Act of 1871 (42 U.S.C. § 1983), to redress deprivations of the civil rights of plaintiff through acts and/or omissions of defendants committed under color of law. Specifically here, defendants deprived plaintiff of his rights under the Fourth and Fourteenth Amendments to the United States Constitution.

### JURISDICTION AND VENUE

2.  Jurisdiction is based upon 28 U.S.C. §§1343 and 1331.

3. Venue lies in the United States District Court, Northern District of Illinois, pursuant to 28 U.S.C. §1391, because all events or omissions giving rise to this claim occurred in this jurisdiction.

## PARTIES

4. At all times herein mentioned, plaintiff, ROBERT A. TAYLOR, was and is a citizen of the United States and resides within the jurisdiction of the court.

5. At all times herein mentioned, defendants RICKY A. HUGHES (hereinafter HUGHES), KEVIN R. JOHNSON (hereinafter JOHNSON), RUSSELL E. WHITE, JR. (hereinafter WHITE), KENNETH J. YAKES (hereinafter YAKES), SHAWN J. PICKETT (hereinafter PICKETT), RICHARD E. PECK, JR. (hereinafter PECK), THOMAS B. LIEBER (hereinafter LIEBER), SCOTT M. McWILLIAMS (hereinafter McWILLIAMS), YOLANDA R. COLLIER (hereinafter COLLIER), JOSHUA WEITZMAN (hereinafter WEITZMAN) were officers in the Chicago Police Department and were acting under color of state law and as the employees or agents of the CITY OF CHICAGO, Illinois. Said defendants are being sued in their individual capacity.

6. Defendant CITY OF CHICAGO is a municipal corporation, duly organized under the laws of the State of Illinois. Defendant CITY OF CHICAGO maintained, managed, and/or operated the Chicago Police Department.

## STATEMENT OF FACTS

7. At all times mentioned herein, plaintiff, ROBERT A. TAYLOR, lived at 643 W. 62nd St., Apartment 1 N (NORTH), in Chicago, Illinois.

8. In the early hours of June 22, 2011, defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER arrived at *643* W. 62nd St., *Apartment 1 N (NORTH)*, in Chicago, Illinois, with a warrant to search the premises at *645* W. 62nd St., *Apartment 1 S (SOUTH)*, in Chicago, Illinois.

2

9. The search warrant appears to have been obtained by appearing in front of a criminal court judge with a so-called "John Doe" informant.

10. Defendants HUGHES, and the officers assisting him, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN knew that the informant was unreliable and that his information about criminal activity was unreliable and had not been corroborated through an independent police investigation..

11. Defendants HUGHES, and the officers assisting him, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN knew that the information presented to the judge was not true, had not been verified or corroborated, and could not be verified or corroborated.

12. Defendants HUGHES, and the officers assisting him, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN intentionally presented false information to the judge in order to obtain the search warrant and it was in reliance on that false information that the judge signed the warrant.

13. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, failed to knock and wait a reasonable amount of time for a response before they forced their way through the door and illegally entered the home.

14. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER illegally searched the home, leaving the home in total disarray.

15. Plaintiff, ROBERT A. TAYLOR, was not home at the time of the entry and search.

16. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER claim to have found a gun and some bullets in a safe in a bedroom that was not plaintiff's bedroom.

17. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN placed an "investigative alert" on plaintiff, calling for his arrest, even though there was no probable cause for his arrest and the issue of probable cause was not presented to a magistrate for judicial determination.

18. Plaintiff came to the police station on June 28, 2011, to inquire about the raid and was immediately placed under arrest based on false claims by defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN.

19. False felony weapons charges were filed against plaintiff and he was maliciously prosecuted.

20. Plaintiff was incarcerated for 4-1/2 months, until the criminal court determined at a combined hearing and trial that defendants had entered and searched the wrong apartment, and then found plaintiff not guilty.

21. Upon plaintiff's release on or about November 3, 2011, plaintiff was falsely rearrested because of the same "investigative alert" that defendants had issued in June 2011.

22. By reason of the acts and omissions of the defendant police officers, and the policies described above and widespread practices of the CITY OF CHICAGO described below, plaintiff sustained injuries, humiliation, and indignities, and suffered great mental and emotional pain and suffering, all to his damage.

23. The aforementioned acts of the defendant police officers were willful, wanton, malicious, oppressive, and done with reckless indifference to and/or callous disregard for plaintiff's rights and justify the awarding of exemplary and punitive damages.

24. By reason of the above-described acts and omissions of the defendant police officers, and the polices and widespread practices of defendant CITY OF CHICAGO, plaintiff was required to retain an attorney to institute, prosecute and render legal assistance to him in the within action, so that they might vindicate the loss and impairment of his rights. By reason thereof, plaintiff request payment by defendants of a reasonable sum for attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other provision set by law.

**COUNT I**
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER for Intentionally Procuring a Search Warrant Through Misrepresentation**

25. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

26. Defendants HUGHES, with the assistance of other officers, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, procured a search warrant from the criminal court judge for 645 W. 62nd St., Apartment 1 S (SOUTH), in Chicago, Illinois, knowing that the so-called "John Doe" informant was unreliable and that his information about the location and alleged criminal activity was unreliable and had not been corroborated through an independent police investigation..

27. Defendants HUGHES, with the assistance of other officers, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, procured a search warrant from the criminal court judge, knowing that the information presented to the judge was not true, had not been verified or corroborated, and could not be verified or corroborated.

28. Defendants HUGHES, with the assistance of other officers, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, intentionally presented false information to the judge in order to obtain the search warrant and it was because of that false information that the judge signed the warrant.

29. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER justify their illegal search of plaintiff's home with the fraudulently obtained warrant.

30. By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

### COUNT II
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER for Unconstitutional Entry of Home and Intentional Execution of Warrant on Wrong Apartment**

31.     Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

32.     Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER illegally entered plaintiff's home at 643 W. 62nd St., Apartment 1 N (NORTH) in Chicago, Illinois, on June 22, 2011, without a valid warrant for the home, without permission, and without legal cause, thus invading and violating plaintiff's security and privacy.

33.     Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER knew that the warrant they had obtained was not valid.

34.     Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER also knew that the warrant they had obtained was for searching *645* W. 62nd St., *Apartment 1 S (SOUTH)*, in Chicago, Illinois, yet they intentionally entered *643* W. 62nd St., *Apartment 1 N (NORTH)*, in Chicago, Illinois, the wrong apartment.

35.     Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, failed to knock and wait a reasonable amount of time for a response before they forced their way through the door and entered plaintiff's home.

36.     By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

### COUNT III
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER for Unconstitutional Search of Home**

37. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

38. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER illegally searched plaintiff's home at 643 W. 62nd St., Apartment 1 N (NORTH), in Chicago, Illinois, on June 22, 2011, without a valid warrant for the home, without permission, and without legal cause, thus invading and violating plaintiff's security and privacy.

39. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER knew that the warrant they had obtained was not valid.

40. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER also knew that the warrant they had obtained was for searching *645* W. 62nd St., *Apartment 1 S (SOUTH)*, in Chicago, Illinois, yet they intentionally searched *643* W. 62nd St., *Apartment 1 N (NORTH)*, in Chicago, Illinois, the wrong apartment.

41. By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, and COLLIER, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

### COUNT IV
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN for False Arrest (June 28, 2011)**

42. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

43. The issuance of a so-called "investigative alert" by defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN was for the purpose of falsely arresting plaintiff, ROBERT A. TAYLOR.

44. Plaintiff was falsely arrested on June 28, 2011, without an arrest warrant.

45. The seizure, arrest, and incarceration of plaintiff for the purpose of charging him with false crimes was without probable cause and unreasonable.

46. By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

**COUNT V**
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN for False Detention, Incarceration, and Prosecution**

47. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

48. Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN maliciously caused criminal charges to be filed and prosecuted against plaintiff.

49. There was no probable cause for the institution of criminal charges against plaintiff.

50. There was no probable cause for the continuation of the prosecution of plaintiff.

51. The individual defendants facilitated this malicious prosecution by creating false police reports, false written criminal charges, and false evidence, and making false statements under oath.

52. Plaintiff was wrongfully incarcerated for 4-1/2 months as a direct result of defendants' actions.

53. After a combined hearing and trial, the warrant and plaintiff's arrest were quashed and plaintiff was found not guilty.

54. By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder, as well as the laws of the State of Illinois. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983, and the laws of the State of Illinois.

### COUNT VI
**Plaintiff, ROBERT A. TAYLOR, Against Defendant JOHNSON for Supervisory Liability**

55. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

56. Defendant JOHNSON was a supervisory officer had the authority to abandon the search of plaintiff's home, but instead approved, condoned, or turned a blind eye to unconstitutional conduct at plaintiff's home on June 22, 2011, and also to plaintiff's false arrest on June 28, 2011. He is therefore liable as a supervisor.

57. By reason of the conduct of defendant JOHNSON, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendant JOHNSON is liable to plaintiff pursuant to 42 U.S.C. §1983.

### COUNT VII
**Plaintiff, ROBERT A. TAYLOR, Against Defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN for Illegal Seizure and Detention (December 23, 2011)**

58. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 24, as though set forth herein in their entirety.

59. The "investigative alert" issued in June 2011 by defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN was still in effect after plaintiff's release from custody on or about November 3, 2011.

60. Plaintiff was falsely seized and detained due to that same "investigative alert" after his release in November 2011, on December 23, 2011.

61. The issue of probable cause for the arrest was never presented to a magistrate for judicial determination.

62. The second seizure and detention of plaintiff were without probable cause and unreasonable.

63. By reason of the conduct of defendants HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, and WEITZMAN, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendants are liable to plaintiff pursuant to 42 U.S.C. §1983.

## COUNT VIII
**Plaintiff, ROBERT A. TAYLOR, Against Defendant CITY OF CHICAGO for *Monell* Claim**

64. Plaintiff, ROBERT A. TAYLOR, incorporates and realleges paragraphs 1 - 63, as though set forth herein in their entirety.

65. The misconduct described paragraphs 1 - 63 was undertaken pursuant to the policy and widespread practice of the Chicago Police Department in that:

    a. By use of an express policy of the Chicago Police Department, officers falsely obtain so-called "John Doe" warrants without verifying the reliability of the informants and/or the reliability of their information.

    b. Chicago Police Department Special Order 07-06, effective June 2, 2007, was intentionally drafted to include a classification of police informant described as a "John Doe" Informant. This express policy, and the actions made permissible by said policy, allow the use of a so-called "John Doe" Informant without police officers knowing the name, address, or telephone number of the informant and without keeping any records or files of the

        informant or his/her track record for providing reliable and accurate information regarding criminal activity.

   c.    The actions implicitly allowed by this express policy include, but are not limited to the following:

- There is no requirement for an officer to make or keep any records of the identity or reliability of the "John Doe" Informant.

- There is no requirement that the reliability and credibility of the "John Doe" Informant be vetted.

- There is no requirement that the "John Doe" Informant have a track record of providing truthful information in the past.

- There is no requirement that the officer even know the true identity of the "John Doe" Informant, or have any contact information for the "John Doe" Informant.

- There is no requirement that the "John Doe's" recitation of and information about criminal activity at a residence be independently corroborated.

- There is no requirement for an officer to make or keep any records of any attempts to corroborate any information about criminal activity at a residence.

- There is no requirement that the officer verify that the "John Doe" Informant had in fact ever been to the target residence or had ever met the person targeted in the warrant.

- There is no requirement that the officer verify that the alleged target lived at, frequented, or even had ever been at the targeted residence.

   d.    75% of all warrants obtained by the Organized Crime Bureau, Narcotics Division, are obtained with "John Doe" Informants.

   e.    As a matter of implied policy and widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department illegally enter and search homes without a warrant, falsely obtain so-called "John Doe" warrants without verifying the reliability of the informants and the reliability of their information, misrepresent information to magistrates in order to obtain warrants, fail to document police activity in reports which

11

        may be questioned in order to avoid scrutiny and accountability, and illegally seize and detain citizens in a manner similar to that alleged by plaintiffs in Counts I - VII on a frequent basis.

f. As a matter of both policy and practice, the Chicago Police Department directly encourages, and thereby is the moving force behind, the very type of police misconduct at issue here by failing to adequately train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference.

g. As a matter of both policy and practice, the Chicago Police Department facilitates the very type of police misconduct at issue here by failing to adequately punish and discipline prior instances of misconduct, thereby leading Chicago police officers to believe their actions will never be scrutinized and, in that way, directly encourages future abuses such as those affecting plaintiffs.

h. There is no oversight to the training of officers regarding search warrants. The training has been conducted by Commander James O'Grady of the Organized Crime Bureau. Lt. Michael Pigott, the commanding officer in charge of the Education and Training Division and thus all police training, fails to oversee the content of O'Grady's course. Chief Nicholas Roti, in charge of the Organized Crime Bureau, also fails to oversee the content of O'Grady's course.

i. James O'Grady, who is both a police commander and an attorney, is considered "the expert" on search warrants, and he teaches the following as part of the search warrant course to all officers:

- Probable cause is subjective and an officer has to subjectively feel that there is probable cause based on his investigation, which could be based on just driving to the location with the "John Doe" Informant and having

him/her point to the residence where he/she claims narcotics were seen or purchased.

- An officer is not required to know a "John Doe" Informant's real name, is not required to know the informant for any particular length of time, and is not required to know anything about the informant, including the informant's criminal record.

- A "John Doe" Informant does not have to have a track record of giving reliable information and does not ever have to have given any information at all in the past.

- A "John Doe" Informant may be under the influence of narcotics when giving the officer the information and also when appearing before the judge.
- An officer does not have to determine if the target for the warrant is linked to the address of the target residence.

- There is no requirement that there be any sort of surveillance or other independent investigation to corroborate any criminal activity. The officer and the "John Doe" Informant driving past a building with the "John Doe" saying, "That's where I bought the drugs" itself is sufficient corroboration of criminal activity in the building.

- The burden is on the judge signing the warrant to determine the credibility of the "John Doe" Informant," thus absolving a police officer from having the responsibility to determine the credibility of the informant.

j.     The Chicago Police Department does not have a supervisory system in

place that can monitor the use of "John Doe" Informants, in that:

- Since there are no files kept of "John Doe" Informants, there is no one keeping track of the number of "John Doe" warrants or the success rate of the execution of those warrants.

- Because the identity and address of the "John Doe" Informant are not known, no one keeps track of how many times the same informant has been used, successfully or not, either by the same officer, or by other officers in the Chicago Police Department.

- With no file and no documentation, there is no way a supervisor can discipline an officer and hold that officer accountable.

- With no requirement that an officer know who a "John Doe" is, or anything about the informant, an officer cannot be reprimanded that he or she did not properly vet the informant.

- With no requirement that the criminal activity reported actually took place, other than by a drive-by statement by the informant that THAT is the place where I bought my drugs, an officer cannot be reprimanded that he or she did not properly corroborate the existence of criminal activity.

13

    k.    The CITY OF CHICAGO has failed to have an effective disciplinary system in effect that investigates police misconduct in the procurement of a warrant.

In part, plaintiffs contend:

- The investigation of the Bureau of Internal Affairs of a complaint extends only to what happens during the execution of a warrant, not to what happens in the obtaining of a warrant.

- Officers are not questioned by Internal Affairs about the identity or reliability of a "John Doe" Informant, or the circumstances in obtaining the warrant.

- Because no file is kept, Internal Affairs has no file to look at.

- Sgt. Ray E. Broderdorf of the Bureau of Internal Affairs has given sworn testimony as a City of Chicago Rule 30(b)(6) witness in an unrelated case that it is not necessary to question an officer about how a "John Doe" warrant was obtained, because the "John Doe" Informant appears before the judge before the issuance of the warrant and the judge does the monitoring, because "[t]hat's what the judge is for."

- In his 10 years in Internal Affairs, Sgt. Broderdorf has never sustained the allegations by a complainant of an officer conducting an illegal search. He has never sought the criminal prosecution of a department member who conducted an illegal search of a home. He has always made a determination that it was "an honest mistake."

- Officers at large are never told about pending investigations or the number of complaints brought against police officers in regard to search warrants. Officers only find out about a complaint when there is a finding of "sustained." Therefore, there is little deterrence.

    l.    The CITY OF CHICAGO has failed to act to remedy the patterns of abuse described in Counts I - VII, despite actual knowledge of same, thereby causing the types of injuries alleged here.

66.    The policies and practices listed above were the moving force behind the constitutional violations alleged by plaintiff herein. Enabling police officers to use "John Doe" Informants without any constitutional safeguards, with no reporting requirements, with no supervision or oversight, with inadequate training, and with no disciplinary consequences allowed the individual defendant officers in this action to act with impunity in entering and searching

plaintiff's home and later arresting plaintiff, with no fear that their actions would be scrutinized or that there would be any accountability.

67. The misconduct described paragraphs 1 - 63 was undertaken pursuant to the policy and widespread practice of the Chicago Police Department in that:

    a. By use of an express policy of the Chicago Police Department, officers falsely obtain and arrest citizens with so-called police "investigative alerts," thereby by-passing judicial determination of probable cause. This violates the warrant requirement of the Fourth Amendment.

    b. Chicago Police Department Special Order S04-16, effective March 6, 2001, allows officers to make their own determination that they have probable cause, without drafting an affidavit and an arrest warrant and without defending their evidence supporting probable cause to an impartial magistrate.

    c. Also, as a matter of implied policy and widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department use "investigative alerts" as the equivalent of a finding of probable cause, arrest citizens without a warrant based on these alerts, and then fail to cancel the alerts, resulting in citizens being vulnerable to repeated unconstitutional arrests.

    d. Warrantless arrests are made by officers of the Chicago Police Department based on "investigative alerts," regardless of the fact that there is no exigency or emergency requiring immediate action and there is ample time to present the case to a magistrate.

    e. The CITY OF CHICAGO has failed to act to remedy the patterns of abuse described in Counts I - VII, despite actual knowledge of same, thereby causing the types of injuries alleged here.

68. The policies and practices listed above were the moving force behind the constitutional violations alleged herein. Enabling police officers to make their own probable cause determination, with no supervision or oversight, with inadequate training, and with no disciplinary consequences allowed the individual defendant officers in this action to act with impunity in arresting plaintiff on June 28, 2011, and then again on December 23, 2011, with no fear that their actions would be scrutinized or that there would be any accountability.

69. By reason of the policies, practices, and procedures of defendant CITY OF CHICAGO, plaintiff, ROBERT A. TAYLOR, was deprived of rights, privileges and immunities secured to him by the Fourth and Fourteenth Amendments to the Constitution of the United States and laws enacted thereunder. Therefore, defendant CITY OF CHICAGO is liable to plaintiff pursuant to 42 U.S.C. §1983.

WHEREFORE, plaintiff, ROBERT A. TAYLOR, requests judgment as follows against defendants, HUGHES, JOHNSON, WHITE, YAKES, PICKETT, PECK, LIEBER, McWILLIAMS, COLLIER, WEITZMAN, and CITY OF CHICAGO in the claims set forth above, and specifically:

  A. That defendants be required to pay plaintiff general damages, including emotional distress, in a sum to be ascertained at a trial of this matter,

  B. That defendants be required to pay plaintiff special damages, in a sum to be ascertained at a trial of this matter,

  C. That defendants, except CITY OF CHICAGO, be required to pay plaintiff punitive damages in a sum to be ascertained at a trial of this matter,

  D. That an injunction be issued against the CITY OF CHICAGO prohibiting it from using unconstitutional policies, procedures, and practices pertaining to the procurement and execution of so-called "John Doe" warrants, and the issuance and maintenance of "investigative alerts" based on no judicial determination of probable cause, and providing other equitable relief as is deemed just and proper,

  E. That a declaratory judgment be issued declaring the Chicago Police Department policies, procedures, and practices complained of herein to be unconstitutional,

  F. That defendants be required to pay plaintiff's attorneys' fees pursuant to 42 U.S.C. §1988, the Equal Access to Justice Act, or any other applicable provision,

  G. That defendants be required to pay plaintiff's costs of the suit herein incurred, and

  H. That plaintiff be granted such other and further relief as this Court may deem just and proper.

**Plaintiff hereby requests A TRIAL BY JURY.**


Dated: March 2, 2015           /s/ Irene K. Dymkar
                     Irene K. Dymkar


Irene K. Dymkar
Attorney for Plaintiff
53 W. Jackson, Suite 562
Chicago, IL 60604
(312) 345-0123


## CERTIFICATE OF SERVICE

  I, Irene K. Dymkar, an attorney, certify that on the 5th day of March, 2015, a copy of the above First Amended Civil Rights Complaint was served upon the attorneys for defendants named below through the Court's electronic filing system.

| | |
|---|---|
| Raoul V. Mowatt | Tiffany Harris |
| Jonathan C. Green | Lindsey Wilson Gowin |
| City of Chicago, Department of Law | City of Chicago, Department of Law |
| 30 N. LaSalle, Suite 900 | 30 N. LaSalle, Suite 900 |
| Chicago, IL 60602 | Chicago, IL 60602 |

Dated: March 5, 2015           /s/ Irene K. Dymkar
                     Irene K. Dymkar