| | |
|---|---|
| ROBERT A. TAYLOR,<br><br>     Plaintiff,<br><br>  v.<br><br>RICKY A. HUGHES, et al.,<br><br>     Defendants. | No. 13 CV 04597<br><br>Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

After an informant told Chicago police officer Ricky Hughes that plaintiff Robert Taylor, a convicted felon, had a gun in Taylor's apartment, Hughes procured a warrant to search Taylor and the apartment located at 645 West 62nd Street, Apartment 1S. But the address of Taylor's apartment, and the one that police actually searched, was 643 West 62nd Street, Apartment 1N. After officers searched the apartment and found a gun, an investigative alert was issued for Taylor. He was later arrested, held in custody for several months, and tried for the crime of unlawful use of a weapon. The judge made note of the incorrect address on the search warrant, quashed the arrest, and found Taylor not guilty. A few months later, police officers detained Taylor again, acting on the same investigative alert as before, and it took about an hour to clear up the confusion and release him. Taylor believes his constitutional rights were violated due to the search, arrest, prosecution, and detention. He brought claims against Hughes and other officers involved, and both sides move for summary judgment.

# I.    Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A court must "construe all facts and reasonable inferences in the light most favorable to the non-moving party." *Apex Digital, Inc. v. Sears, Roebuck, & Co.*, 735 F.3d 962, 965 (7th Cir. 2013). On cross-motions for summary judgment, a court must draw inferences "in favor of the party against whom the motion under consideration was made." *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008); *see also Bloodworth v. Vill. of Greendale*, 475 Fed.Appx. 92, 95 (7th Cir. 2012) ("Cross-motions must be evaluated together, and the court may not grant summary judgment for either side unless the admissible evidence as a whole—from both motions—establishes that no material facts are in dispute.").

# II.    Background

## A.    The Warrant

Officer Ricky Hughes worked for the Chicago Police Department on the narcotics team. [200] ¶ 13.[1] On June 21, 2011, Hughes met with an informant,

---

[1] Bracketed numbers refer to entries on the district court docket. The facts are largely taken from Taylor's responses to defendants' LR 56.1 statements, [200] and [225], and

referred to by the parties as "John Doe," who said that he had been in Taylor's apartment two days earlier, and that Taylor had shown him a gun. [200] ¶ 14. John Doe told Hughes that Taylor went into a bedroom and emerged with a black .38 revolver. [200] ¶ 14. Hughes reviewed Taylor's criminal history, which revealed felony convictions for cannabis delivery and strong-armed robbery. [200] ¶¶ 15–16; [225] ¶ 4. Hughes did not know if Taylor's robbery offense involved a gun. [204] ¶ 51. Hughes put together a photo array consisting of Taylor and other individuals of the same race, gender, and age-group, and John Doe identified Taylor from that array. [200] ¶¶ 17–18; [225] ¶ 5. Hughes did not believe John Doe was under the influence of drugs or alcohol, and he saw no other reason to doubt John Doe's story. [200] ¶ 19. From their discussion, Hughes gained the impression that John Doe had some degree of familiarity with Taylor. [200] ¶ 20. But John Doe did not tell Hughes why Taylor retrieved the gun from the bedroom, which bedroom he went to, how many bedrooms were in the apartment, or details concerning other occupants of the apartment. [204] ¶ 35.

---

defendants' responses to Taylor's LR 56.1 statements, [204] and [217], where both the asserted fact and the opposing party's response are set forth in one document. Defendants fault Taylor for including additional facts in his objections to defendants' facts, and they move to strike Taylor's LR 56.1 response. [213]. Defendants filed a reply to Taylor's LR 56.1 response, detailing each of their objections. Taylor moves to strike that reply. [226]. Defendants' motion to strike is denied because it is overbroad. Taylor's motion to strike is denied because it is unnecessary. Any arguments raised in the LR 56.1 statements, additional facts included in responses or replies, and statements that are unsupported by admissible evidence (or where a party fails to follow LR 56.1's direction to cite to supporting material in the record) will be disregarded. Only those facts which are properly controverted will be considered disputed.

According to Hughes, John Doe could not tell him Taylor's address, but gave him an approximate location. [200] ¶ 23; [204] ¶ 36. Hughes, John Doe, and another officer drove to that area, and John Doe directed them to Taylor's apartment building. [200] ¶¶ 22, 24; [204] ¶ 37. From outside the building, John Doe identified as Taylor's apartment a front-facing apartment on the first floor. [200] ¶ 25. He also pointed out the door on front of the west side of the building closest to Taylor's apartment. [200] ¶ 28. According to Hughes, John Doe gave him specific instructions to get to Taylor's apartment: enter the building through that door, take the stairs inside to the first floor, walk down the hall, and look for the first door on the left. [200] ¶ 29. A sign on the building read "643–45," and Hughes decided that Taylor's address was 645 West 62nd Street, rather than 643, because the windows of Taylor's apartment were closer to the "45" than to the "643." [204] ¶ 44. Hughes thought that Taylor's apartment number was 1S, because the building was on the south side of the street. [200] ¶¶ 26–27. According to Hughes, in general, conducting further research into the layout, ownership, or exact address of an apartment takes too much time to prove useful. [200] ¶ 31.

Hughes then drafted a search warrant and complaint, identifying as targets Taylor and "645 W. 62nd Street #1S, a multi-unit building, Chicago, Cook County, Illinois." [200] ¶¶ 32, 35. The warrant described the items to be seized as: "Unlawful use of weapon and any documents showing residency, any paraphernalia used in the weighing, cutting or mixing of illegal drugs. Any money, any records detailing illegal drug transactions." [200] ¶ 33. Though John Doe did not mention any drug

activity at Taylor's apartment, Hughes included drugs in the warrant because "using guns and drugs go hand in hand." [200] ¶ 34; [204] ¶ 49. Hughes included in the complaint his meeting with John Doe, the drive-by, and his review of Taylor's criminal history. [183-2]. The complaint also stated that Hughes presented John Doe, along with Doe's criminal history, to the issuing judge for further questioning. [183-2] at 2. But it did not include a description of the apartment's windows or its location in the building, aside from the address. [204] ¶¶ 57, 59. Hughes read the complaint he had drafted to John Doe for verification. [200] ¶ 37.

Hughes, John Doe, and the other officer drove to meet with Judge Nicholas Ford. [200] ¶ 38; [204] ¶¶ 37, 60. Their meeting and conversation took place inside the car. [204] ¶ 60. Judge Ford put Hughes and John Doe under oath, and he read the warrant and complaint. [200] ¶¶ 39, 41; [225] ¶ 13. Although it is not mentioned in the complaint, Hughes told Judge Ford that Taylor had been arrested for strong-armed robbery, but did not tell him that the arrest was in 1992, that it resulted in a conviction, or whether a gun was involved. [204] ¶ 64. Hughes provided Judge Ford with John Doe's criminal history. [200] ¶ 40; [204] ¶ 62. Hughes recalls that John Doe spoke to Judge Ford, but does not remember details of that conversation. [200] ¶ 42; [204] ¶ 63. John Doe signed the search warrant and complaint, and Judge Ford signed the warrant. [200] ¶¶ 43, 45.

**B.    The Search**

In June 2011, Taylor lived in a two-bedroom apartment in an L-shaped, 12-unit apartment building located at 643-645 West 62nd Street. [200] ¶ 8; [204] ¶¶ 3–

4. One section of the building abutted 62nd street and extended south. [204] ¶ 4. The street address for that section was 643 West 62nd Street. [204] ¶ 4. Behind that section (at its southern end), the building protruded to the west. [204] ¶ 4. That part of the building had the street address 645 West 62nd Street. [204] ¶ 4. Each section of the building housed six apartments: 1N, 1S, 2N, 2S, 3N, and 3S. [204] ¶ 6. The front of the building displayed the numbers, 643–45, and the structure had separate entrances for 643 and for 645. [200] ¶¶ 10–11. In June 2011, neither entrance was labeled. [200] ¶ 11. Taylor's address was 643 West 62nd Street, Apartment 1N. [200] ¶¶ 9, 12; [204] ¶ 3. His apartment was on the north end of the building, with windows facing West 62nd Street. [200] ¶ 9. Apartment 1S of 645 West 62nd Street was a different unit, at the south end of the building in the other section. [204] ¶ 46.

On June 22, 2011, Hughes arranged a pre-execution meeting of the search team, consisting of Hughes and defendants Kevin R. Johnson, Russell E. White, Jr., Kenneth J. Yakes, Shawn J. Pickett, Richard E. Peck, Jr., Thomas B. Lieber, Scott M. McWilliams, and Yolanda R. Collier. [204] ¶ 67; [217] ¶ 14. Johnson, a sergeant who acted as search team supervisor, read the warrant and complaint in support of the warrant, and was responsible for ensuring that the team was familiar with the location of the search. [204] ¶ 69. Hughes conveyed to the team the directions he had received from John Doe. [204] ¶ 72. Following those directions, the team conducted a forced entry into the apartment, and found five people in one bedroom: Taylor's niece, Barbara, Mario Barnes, who identified himself as Taylor's nephew, and three children. [204] ¶ 74; [217] ¶ 15. Also in the bedroom was an unlocked safe

containing a blue semi-automatic gun, a magazine, and some ammunition. [200] ¶ 51; [204] ¶ 75. What Barnes said about the gun is in dispute—Hughes testified that Barnes denied owning the gun and said Taylor had guns, but Barnes denies this.[2] [200] ¶ 52.

In the second bedroom, officers found Taylor's employee identification badge and a utility bill in his name. [200] ¶ 53. They may also have found a live round of ammunition on the floor, but the parties dispute this based on conflicting information in the police records documenting the search. [200] ¶ 53. The utility bill listed the address as 643 West 62nd Street, Apartment 1N, leading Hughes to realize that the address in the search warrant was incorrect. [200] ¶ 54. But by that time, the search was already complete. [204] ¶ 55. Taylor was not in the apartment during the search. [204] ¶ 74.

### C. The Arrests

After the police left, Taylor's niece called Taylor and told him that the police wanted to talk to him. [204] ¶ 89. He did so six days later. [204] ¶ 90. In the meantime, according to defendant Detective Joshua Weitzman, Hughes asked him to enter an investigative alert for Taylor into the Chicago police database, signaling probable cause to arrest Taylor, though Hughes does not remember this. [200] ¶ 56; [204] ¶¶ 86–87. When Taylor went to the police station on June 28, 2011, he was

---

[2] Defendants object to the declaration of Mario Barnes, who was not deposed by either party. Barnes was identified as a witness in plaintiff's disclosures, but Taylor did not initially provide defendants with his contact information. Barnes's declaration is dated one month after the deadline for fact discovery. Taylor's lack of cooperation in disclosing Barnes's information goes against the spirit of the Federal Rules, but the prejudice to defendants (given that they were aware he was a potential witness and he was not under the exclusive control of plaintiff) is not so great that his declaration must be disregarded.

taken into custody on the basis of the investigative alert. [204] ¶ 90. Hughes was notified of this, met with Taylor, and charged him in a felony complaint with unauthorized use of a weapon. [204] ¶ 94. Taylor remained in custody for 128 days until a combined hearing on a motion to quash the arrest and a bench trial on November 3, 2011. [204] ¶ 95. Hughes admitted at that hearing that the search warrant misstated Taylor's address, which Hughes had documented in his police report, and the court quashed Taylor's arrest and found him not guilty. [204] ¶ 95. But the following month, on December 23, 2011, Taylor was arrested again after a traffic stop, based on the same investigative alert. [204] ¶ 96. This time, he remained in custody for over an hour until the arresting officers, who are not parties to this case, realized he had already been arrested and processed for that alert and let him go. [200] ¶ 61; [204] ¶ 97.

Taylor brings a Fourth Amendment claim against every defendant officer (except Weitzman) for procuring a warrant through misrepresentation (Count I), unconstitutional execution of a warrant and entry of a home (Count II), and unconstitutional search of a home (Count III). In the alternative to Counts II and III, Taylor alleges liability for Officer Johnson under a theory of supervisory liability (Count VI). He also complains that his constitutional rights were violated by every defendant officer due to his arrest on June 28, 2011 (Count IV), and the following detention, incarceration, and prosecution (Count V), as well as the December 23, 2011 seizure and detention (Count VII). Count V alleges a malicious-

prosecution claim under Illinois law, as well.[3] Taylor moves for summary judgment on Counts I–IV, VI, and VII against a subset of defendants named in each count. Taylor also moves for a stay on Count V. Defendant officers move for summary judgment on all counts.

## III. Analysis

### A.   John Doe's Information

Several of Taylor's claims turn on the validity of the search warrant, which was based on information provided by the confidential informant, John Doe. Taylor argues that, because defendants withheld John Doe's identity, they cannot rely on information provided by John Doe to support the validity of the warrant. The government is afforded a limited privilege to withhold the identity of a confidential informant. *United States v. Jefferson*, 252 F.3d 937, 940 (7th Cir. 2001). Defendants made use of that privilege in this case, which Taylor challenged in a motion to compel. That motion resulted in a grant of additional discovery concerning John Doe's reliability and credibility, despite the increased risk that an informed observer might be able to deduce his identity. *See* [107], [155]. But Taylor now compares defendants' conduct to that of a party claiming privilege to block discovery and later attempting to present suppressed evidence at trial.

Accepting Taylor's theory would simplify things, since John Doe served as the only source of information of criminal activity at the apartment for purposes of

---

[3] Taylor also brings a claim against the City of Chicago under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), (Count VIII), but that claim is stayed and not at issue on these cross-motions for summary judgment.

procuring the warrant, and without that information, the warrant would be unsupported by probable cause and thus invalid. But Taylor does not identify any withheld information that defendants seek to introduce on summary judgment. Taylor's arguments in favor of excluding any and all information provided by John Doe in the analysis of the warrant's validity are unpersuasive. Taylor may not be satisfied with the information yielded by the additional discovery, but that is no more likely the result of the withholding of John Doe's identity than of fading memories and Taylor's discovery strategy. Indeed, though Taylor claims blocking direct access to John Doe prevented him from properly assessing John Doe's reliability and credibility, his arguments relate more to whether the current record establishes John Doe's reliability and credibility, not that any prejudice results from the consideration of John Doe's statements. The information provided by John Doe will not be disregarded.

## B.    The Search

Taylor claims that the search warrant was invalid when issued for lack of probable cause. In reviewing the issuing judge's probable cause determination, courts need only evaluate whether that judge had "a substantial basis for concluding that a search would uncover evidence of a crime." *United States v. Glover*, 755 F.3d 811, 816 (7th Cir. 2014) (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)). When the complaint in support of the warrant is based on an informant's tip, the evaluation involves the totality of the circumstances, and consideration of five factors in particular: (1) the level of detail; (2) the extent of firsthand

observation; (3) the degree of corroboration; (4) the time between the events reported and the warrant application; and (5) whether the informant appeared or testified before the magistrate. *Glover*, 755 F.3d at 816. "[N]o one factor necessarily dooms a search warrant." *Id.* (quoting *United States v. Johnson*, 655 F.3d 594, 600 (7th Cir. 2011)). "[A] deficiency in one factor may be compensated for by a strong showing in another or by some other indication of reliability." *United States v. Peck*, 317 F.3d 754, 756 (7th Cir. 2003) (quoting *United States v. Brack*, 188 F.3d 748, 756 (7th Cir. 1999)).

Based on the undisputed facts, the complaint supported a finding of probable cause. Doe's account was based on the firsthand observation of events that had occurred just two days earlier. The complaint described a specific type of gun that Doe saw in Taylor's possession on that day and on previous occasions, and which Taylor had retrieved from a bedroom in his apartment. Hughes corroborated Doe's story (in part) by having him identify Taylor from a photo array, and driving with Doe to locate the apartment. Hughes also reviewed Taylor's criminal record and found his felony conviction. But as Taylor notes, this constitutes only a minimal showing of detail and corroboration. *See Glover*, 755 F.3d at 816–17 (describing an affidavit with a similar level of detail and degree of corroboration as having "little detail" and being "minimally corroborated"). The complaint does not elaborate on the layout of the apartment and in which bedroom the gun was kept, and Hughes confirmed only minor facts and legal conduct, but not criminal activity. Moreover, the complaint provides no basis for seizing drug paraphernalia outside of Hughes's

perceived (and undisclosed to the issuing judge) link between guns and drugs. But Hughes presented Doe, the complaint, and Doe's criminal history to the state-court judge, "giving the issuing magistrate an opportunity 'to evaluate the informant's knowledge, demeanor, and sincerity.'" *United States v. Robinson*, 724 F.3d 878, 884 (7th Cir. 2013) (quoting *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008)).

Taylor argues that the complaint did not provide a sufficient basis for a finding of probable cause because, in addition to its lack of detail and corroboration, it lacked information concerning John Doe's reliability and credibility. Taylor emphasizes the fact that there is no evidence showing a history of John Doe providing accurate information to the police, and that the record does not clearly establish the circumstances surrounding Hughes's introduction to John Doe or why John Doe agreed to provide him with information. "[I]nformation about the informant's credibility or potential bias is crucial." *Glover*, 755 F.3d at 816. There is sometimes a "concern that the tip was provided to harass or remove a rival." *Id.* (citing *United States v. Bell*, 585 F.3d 1045, 1050 (7th Cir. 2009). In *Glover*, the court discounted the issuing judge's determination of probable cause as under-informed, due to the omission of known, highly relevant, and damaging information about the informant's credibility, including his criminal record. 755 F.3d at 817. But Taylor presents no evidence to suggest that relevant information was known and undisclosed at the time. And "an informant's 'unknown reliability' is not necessarily fatal to the probable-cause determination." *United States v. Dismuke*, 593 F.3d 582, 587 (7th Cir. 2010).

John Doe was presented to a judge, along with his criminal history, and he spoke to the judge under oath. What they discussed is unknown—Hughes's testimony is inconsistent as to whether Hughes remembers the judge asking John Doe questions about his relationship to Taylor and what the gun looked like, and he remembers none of John Doe's responses. The discussion took place in a car, and no transcript exists. But a discussion took place, and the judge had both the complaint and Doe's criminal history. He had sufficient information on John Doe's credibility that would have triggered further inquiry if necessary, and "great deference" is owed to his finding of probable cause. *Robinson*, 724 F.3d at 884 (citing *United States v. Carson*, 582 F.3d 827, 831 (7th Cir. 2009)). Even when Taylor receives the benefit of any inferences, the judge's finding was correct as to probable cause for the gun crime; an eyewitness testified in person and under oath to a judge who had the ability to question the eyewitness's credibility, the eyewitness described the unlawful possession of a gun by Taylor at the premises to be searched, and the eyewitness's identification of Taylor was corroborated by photo line-up.

Count I of the complaint alleges that Hughes procured the search warrant through misrepresentation, because he recklessly relied on John Doe to establish probable cause. A warrant is invalid if the affiant made a false statement, material to the finding of probable cause, with intentional or reckless disregard for the truth. *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). As explained above, Hughes provided the judge enough information to establish that the warrant was supported by probable cause. Taylor identifies a number of topics on which we have no

information, like John Doe's relationship to Taylor, but has not pointed to any omitted facts whose inclusion would have undermined the finding of probable cause. Hughes was not reckless in relying upon John Doe or in drafting the complaint in support of the warrant, and he did not procure the warrant through misrepresentation. In addition, Taylor presents no evidence that any other named defendant was personally involved in procuring the warrant. Thus, summary judgment on Count I is granted in favor of defendants.

Taylor also argues that the warrant is invalid because it misstates the address of Taylor's apartment. In addition to probable cause, the Fourth Amendment requires that a warrant particularly describe the place to be searched and the persons or things to be seized. *Maryland v. Garrison*, 480 U.S. 79, 84 (1987). "The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing [judge]." *Garrison*, 480 U.S. at 85. "[O]fficers seeking a search warrant relying on information provided by a confidential informant are under an obligation to take reasonable steps to confirm that information before using it in an affidavit in support of the warrant." *Jacobs v. City of Chicago*, 215 F.3d 758, 768 n.4 (7th Cir. 2000) (citing *Gates*, 462 U.S. at 241–42). Here, the warrant identifies the place to be searched as 645 West 62nd Street, Apartment 1S, though the officers actually searched the apartment located at 643 West 62nd Street, Apartment 1N. Thus, on its face, the warrant does not describe the place to be searched with particularity. In fact, it describes a distinctly different place, presumably another person's home.

Defendants argue that the purpose of the Fourth Amendment is not to protect against errors like the one here—the misidentification of an apartment in a multi-unit building—but rather to prevent "wide-ranging exploratory searches." *See Garrison*, 480 U.S. at 84. It is true that officers are afforded "some latitude for honest mistakes that are made . . . in the dangerous and difficult process of making arrests and executing search warrants." *Id.* at 87. "[A] typographical error in an address does not invalidate a warrant if the affidavit otherwise identifies the targeted premises in sufficient detail and there is no chance that another location might be searched by mistake." *United States v. McMillian*, 786 F.3d 630, 640 (7th Cir. 2015). And if an otherwise valid warrant is revealed to be overbroad or ambiguous once officers are in the field, it does not necessarily become retroactively invalid. *Garrison*, 480 U.S. at 85; *see also United States v. Kelly*, 772 F.3d 1072, 1082 (7th Cir. 2014) ("The fact that the building's layout differed from what the officers were able to discern without having been inside is insufficient to render the warrant invalid.")

But this is not a case where the warrant was revealed to be overbroad or ambiguous when the officers arrived onsite. This was a warrant that identified an entirely different apartment and did not include any description or directions to the correct apartment. Instead, the complaint in support of the warrant says that John Doe "pointed out 645 W. 62nd Street #1S." [183-2] at 2. There is no evidence that Hughes gave the issuing judge more information. Even though Hughes knew the precise location of the apartment, conveyed that information to the rest of the

search team at the pre-execution meeting, and accompanied the team in executing the warrant, Hughes's personal knowledge of the apartment's location can satisfy the particularity requirement only if that knowledge was communicated to the issuing judge. *See United States v. Jones*, 54 F.3d 1285, 1292 (7th Cir. 1995). That was not done here. The Fourth Amendment requires that a search warrant describe the specific areas and things for which there is probable cause to search with such particularity that an executing officer can "with reasonable effort ascertain and identify the place intended." *McMillian*, 786 F.3d at 639 (quoting *Steele v. United States,* 267 U.S. 498, 503 (1925)). Without Hughes's personal knowledge, no amount of effort would allow an executing officer to identify and search Taylor's apartment. With the warrant as his guide, that officer would end up in a different apartment entirely. The warrant is therefore invalid for failing to meet the particularity requirement.

Defendants argue that the execution of the search was nevertheless constitutional because they had a good-faith belief in the warrant's validity. "Even if a warrant is ultimately found to be . . . lacking in particularity, searches conducted pursuant to the warrant may be valid under the good-faith exception set forth in *United States v. Leon*, 468 U.S. 897, 926 (1984). For a warrant search to qualify for the good-faith exception, however, the officers conducting the search must have manifested an objective good-faith belief in the validity of the warrant." *Jones v. Wilhelm*, 425 F.3d 455, 464 (7th Cir. 2005) (citation omitted). "There is no dispute that the officers believed that the warrant authorized the search they conducted."

*Massachusetts v. Sheppard*, 468 U.S. 981, 988 (1984). The only issue is whether that belief was objectively reasonable.

Hughes's deduction of Taylor's address was wrong, but there is no evidence that his efforts lacked good faith or that an objective, informed observer would conclude that the listed address was not the apartment targeted by the search. Hughes thought that confirming addresses through databases or other means would take too long, and this suggests a lack of diligence on his part. The logic behind Hughes's deduction—that every apartment in a building on the south side of the street would be an "S" apartment and the apartment looked like it was associated with the signage for "645"—is weak. But Hughes had not been to the apartment before, and there was no signage indicating the building number above the entryway. The weakness of his reasoning does not demonstrate that he should have known he was wrong, because it is undisputed that the exterior of the building did not provide contrary information. Moreover, Hughes mitigated the risk that the wrong location would be searched by participating in the search and directing the team to the correct location. *See United States v. Thomas*, 263 F.3d 805, 809 (8th Cir. 2001). This supports a finding of good faith because Hughes (and the other searching officers) reasonably believed they had secured a valid warrant for Taylor's apartment, and that is where they searched.

Taylor argues that Hughes and every officer on the search team should have figured out that the address was wrong by deducing the correct address from the geography of the area. Taylor's argument is based on the expectation that each

individual officer would question the validity of the warrant after hearing the directions given to them during the pre-execution meeting. There is no evidence that the individual officers actually did realize that the apartment they were being directed to could not be apartment 1S of 645 W. 62nd Street. And the record is clear that they did not discover the address until after they had identified the apartment as Robert Taylor's. It would be unreasonable to expect officers to second-guess the address on the warrant based on environmental clues when the affiant had given them specific directions. Once they confirmed they were in Taylor's apartment, there was no need to abandon their search. *See Garrison*, 480 U.S. at 86 (finding that if executing officers became aware that the warrant contained an inaccurate address, "they would have been obligated to limit their search to [the target's] apartment"). Because the incorrect address listed on the warrant did not invalidate defendants' execution of a properly procured search warrant, and Taylor raises no concerns unrelated to the incorrect address, summary judgment is granted in favor of defendants on Counts II and III.

Taylor characterizes Count VI of the complaint as an alternative basis for Johnson's liability, due to his role in supervising the search. But Taylor's theory of supervisor liability depends on the unlawful execution of the search and requires that Johnson "approved, condoned, or turned a blind eye to [the subordinate officers'] allegedly unconstitutional actions." *Morfin v. City of E. Chicago*, 349 F.3d 989, 1001 (7th Cir. 2003). Taylor must show that Johnson acted "either knowingly or with deliberate, reckless indifference." *Jones v. City of Chicago*, 856 F.2d 985,

992–93 (7th Cir. 1988). There is no evidence to suggest that Johnson knew or suspected that the search team was conducting an unconstitutional search but failed to use his authority to stop the violation. As explained above, Johnson and the rest of the search team reasonably believed they were lawfully executing a valid warrant. Therefore, summary judgment is granted in favor of Johnson with respect to Count VI.

### C. The Seizures

"To prevail on a false-arrest claim under § 1983, a plaintiff must show that there was no probable cause for his arrest." *Neita v. City of Chicago*, 830 F.3d 494, 497 (7th Cir. 2016) (citing *Thayer v. Chiczewski*, 705 F.3d 237, 246 (7th Cir. 2012)); *see also Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) ("Probable cause is an absolute defense to a claim of wrongful arrest asserted under section 1983 against police officers."). An officer has probable cause to arrest if "at the time of the arrest, the facts and circumstances within the officer's knowledge . . . are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Neita*, 830 F.3d at 497 (quoting *Thayer*, 705 F.3d at 246). "An officer's belief in the existence of probable cause 'need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false.'" *Driebel v. City of Milwaukee*, 298 F.3d 622, 643 (7th Cir. 2002) (quoting *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000)) (emphasis omitted). "That determination depends on the elements of the underlying

criminal offense." *Neita*, 830 F.3d at 497 (citing *Stokes v. Bd. of Educ.*, 599 F.3d 617, 622 (7th Cir. 2010)).

Taylor was arrested for knowingly possessing a gun as a convicted felon. *See* 720 ILCS 5/24-1.1(a). It is undisputed that Taylor was a convicted felon in June 2011. As discussed above, John Doe's information, together with the corroboration of Taylor's identity and apartment building and presentation of Doe to a judge, provided probable cause to believe that Taylor knowingly possessed a firearm (a revolver) and supported the issuance of a search warrant. That same probable cause to believe Taylor possessed evidence of a crime was probable cause to believe Taylor committed a felony. "[P]robable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes v. Vill. of Hoffman Estate*, 511 F.3d 673, 682 (7th Cir. 2007).

There also existed probable cause that Taylor committed a crime involving the weapon actually recovered—the semi-automatic gun. The basis for Hughes's belief that Taylor knowingly possessed the gun found during the search is one of constructive possession. To establish that a person is in constructive possession of a firearm, the government must establish: "(1) that defendant had knowledge of the presence of the weapon; and (2) that defendant exercised immediate and exclusive control over the area when the weapon was found." *People v. Ross*, 407 Ill.App.3d 931, (1st Dist. 2011). Knowledge may be inferred by a person's actions, declarations, or conduct. *People v. Beverly*, 278 Ill.App.3d 794, 798 (4th Dist. 1996). Control is

established when a person has the "intent and capability to maintain control and dominion" over an item. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. And a person may constructively possess an item even if others have access to the area where it was recovered. *People v. Maldonado*, 2015 IL App (1st) 131874, ¶ 43.

Taylor says probable cause was lacking because the gun was found in an unlocked safe in a bedroom where police found five other people, and Taylor's ID and a utility bill bearing his name were found in a different bedroom. Taylor believes no reasonable person would infer that Taylor had control over a bedroom occupied by two other adults and three children, where no other possessions of Taylor were found. Taylor also points out that defendants present no other circumstantial evidence establishing that Taylor knew there was a gun in the safe or had access to or control over the bedroom in which it was found. It is true that there is no record of Taylor's specific control over the bedroom with the gun, but Taylor's living in the apartment is some circumstantial evidence from which one could infer he knew of the apartment's contents. There is no evidence that Taylor was excluded from the bedroom, and the safe was unlocked. Hughes had John Doe's information, Taylor's criminal history, and the recovery of a gun from a bedroom accessible to several people. Taking the facts in Taylor's favor, Hughes did not have Barnes's statement attributing firearm possession to Taylor. This quantum of evidence certainly falls short of proof beyond a reasonable doubt, but it is sufficient to give a prudent person reason to believe that Taylor shared accountability for the gun in the safe. There was probable cause to arrest Taylor, and defendants are

entitled to summary judgment on the false-arrest claims arising out of the June 2011 arrest.

In addition, "if the officers can establish that they had 'arguable probable cause' to arrest the plaintiff, then the officers are entitled to qualified immunity, even if a court later determines that they did not actually have probable cause." *Williams v. Jaglowski*, 269 F.3d 778, 781 (7th Cir. 2001) (citing *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir. 1998)). "Arguable probable cause exists when 'a reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" *Humphrey*, 148 F.3d at 725 (emphasis omitted) (quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997)).

Hughes could reasonably have believed that Taylor had joint control over the gun in the safe, even if that safe were in a separate bedroom than the one he usually occupied, given that Taylor lived in the apartment, multiple people had access to the bedroom, the safe was not locked, Taylor was a convicted felon who could not lawfully possess a gun, and John Doe said that Taylor had at least one gun. While the evidence of constructive possession was thin, it would not be objectively unreasonable for an officer to believe that probable cause existed. Therefore, Hughes is shielded from liability.

Weitzman is also entitled to qualified immunity. It is undisputed that he relied on Hughes's statements that a search executed in the apartment of a

convicted felon yielded a gun in initiating the investigative alert that led to Taylor's arrest. And Taylor provides no evidence to suggest that Weitzman's reliance was unreasonable, even if mistaken. In addition, Taylor presents no evidence that any other named defendant was personally involved in Taylor's arrest. Thus, summary judgment is granted in favor of all defendants with respect to Count IV.

Taylor's December arrest presents a different issue. Taylor had been acquitted, so there was no probable cause to arrest him for possession of a gun. Taylor believes that Hughes and Weitzman, by initiating an investigative alert but failing to cancel it, caused his arrest after his acquittal. The parties dispute whether Hughes and Weitzman could have foreseen that Taylor would be arrested again on the same alert. General principles of causation in tort law, including the foreseeability requirement, apply to constitutional torts litigated under § 1983. *See, e.g., Parrett v. City of Connersville,* 737 F.2d 690, 695 (7th Cir. 1984). But neither party seems to know who is responsible for canceling investigative alerts. There is no evidence that Hughes plays any such role, and while Hughes set the investigative alert in motion in June 2011, there is no evidence from which one could infer that it would be reasonably foreseeable to Hughes that Taylor would be arrested post-acquittal. Hughes was not personally involved in the December arrest and it was not foreseeable to him. Thus, he is entitled to summary judgment on Count VII. Nonparty Detective David Betz, who eventually did cancel the alert, testified that he believed Weitzman was supposed to have canceled it. This is sufficient, drawing the inferences in Taylor's favor, to find that Weitzman—who

placed the alert in the system in the first place—bears sufficient personal responsibility such that a jury could find him liable for Taylor's December 2011 arrest. But the record is not so clear that Taylor is entitled to judgment as a matter of law with respect to Weitzman—he raises a genuine dispute as to his responsibility for canceling the alert. Therefore, summary judgment is denied on Count VII with respect to Weitzman. Because Taylor does not allege personal involvement by any other defendant, summary judgment is granted in favor of all other named defendants with respect to Count VII.

### D.    Malicious Prosecution

Defendants claim that no reasonable jury would find in favor of Taylor with respect to his claim for malicious prosecution under Illinois law.[4] The required elements of the claim are: (1) the commencement or continuance of a criminal proceeding by the defendant; (2) the termination of the proceeding in favor of the plaintiff; (3) the absence of probable cause; (4) malice; and (5) damages. *Gauger v. Hendle*, 2011 IL App (2d) 100316. "The absence of any one of these elements bars a plaintiff from pursuing the claim." *Swick v. Liautaud*, 169 Ill.2d 504, 512 (1996).

The same analysis supporting a finding of probable cause to arrest Taylor in June precludes liability for malicious prosecution. Probable cause in a malicious-prosecution case is defined as "a state of facts that would lead a person of ordinary care and prudence to believe or to entertain an honest and sound suspicion that the

---

[4] Defendants argue repeatedly, and without explanation, that Taylor did not properly raise a state-law malicious-prosecution claim, and that Taylor does not contest that failure. But, as Taylor mentions in the briefing, the state-law malicious-prosecution claim is alleged in the amended complaint.

accused committed the offense charged." *Fabiano v. City of Palos Hills*, 336 Ill.App.3d 635, 642 (1st Dist. 2002) (citation omitted). Its existence is "'determined by looking to what the defendants knew at the time of subscribing a criminal complaint' and not at the (earlier) time of arrest." *Gauger*, 2011 IL App (2d) 100316, ¶ 112 (quoting *Porter v. City of Chicago*, 393 Ill.App.3d 855, 868–69 (1st Dist. 2009)). Probable cause depends on "the state of mind of the person commencing the prosecution that is at issue—not the actual facts of the case or the guilt or innocence of the accused." *Id.* (quoting *Sang Ken Kim v. City of Chicago*, 368 Ill.App.3d 648 (1st Dist. 2006)). As explained above, the June arrest was supported by probable cause, and Taylor does not argue that any new information came to light after the arrest that would change the probable cause analysis or suggest that probable cause no longer existed. Therefore, no reasonable juror could find in Taylor's favor on his malicious-prosecution claim.

The malicious-prosecution claim also fails because defendants did not institute or continue criminal charges against Taylor. A malicious-prosecution claim against police officers is "anomalous," because "the State's Attorney, not the police, prosecutes a criminal action." *Reed v. City of Chicago*, 77 F.3d 1049, 1053 (7th Cir. 1996). "Thus, a plaintiff may not maintain a malicious-prosecution claim against an arresting officer without first showing 'some postarrest action which influenced the prosecutor's decision to indict.'" *Colbert v. City of Chicago*, No. 16-1362, 2017 WL 985832, at *4 (7th Cir. Mar. 14, 2017) (quoting *Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 902 (7th Cir. 2001)). Taylor presents no

evidence that defendants made any false statements or otherwise influenced the state prosecutor's decision to indict.[5] It is undisputed that the post-search reports contained Taylor's correct address. In fact, the state-court judge who quashed the arrest and found Taylor not guilty in his underlying criminal action explicitly noted that the police properly documented the inaccuracy of the address listed on the search warrant. *See* [183-7] at 23. Summary judgment is granted in favor of defendants with respect to Taylor's claim for malicious prosecution under Illinois law.

Taylor also brings the malicious-prosecution claim under § 1983. Taylor requested a stay on that claim until the Supreme Court issued its decision in *Manuel v. City of Joliet, Ill.*, No. 14-9496, 2017 WL 1050976 (U.S. Mar. 21, 2017). *See* [188]. The motion for a stay is denied, because the Supreme Court issued its decision while the motions for summary judgment were under advisement. The Court held that unlawful pretrial detention, even after the start of legal process, is a cognizable claim under § 1983 and the Fourth Amendment. *Manuel,* 2017 WL 1050976, at *8. While the elements of the claim have yet to be determined, the existence of probable cause defeats liability. *See id.* at *6 (probable cause is essential for pretrial detention). In addition, defendants cannot be liable for Taylor's pretrial detention where they made no post-arrest action or false statements that influenced the state prosecutor to indict; they were not personally involved in the

---

[5] While neither party mentions Taylor's indictment, or how an indictment may or may not affect his claims, the record reflects that Taylor was indicted after his arrest. *See* [204] ¶ 95; [183-5]; [183-6].

allegedly unconstitutional pretrial detention. Summary judgment with respect to Count V is therefore granted in favor of defendants.

## IV.    Conclusion

Taylor's motion to stay, [188], defendants' motion to strike, [213], and Taylor's motion to strike, [226], are denied. Taylor's motion for summary judgment, [190], is also denied. Defendants' motion for summary judgment, [185], is granted in part. Summary judgment is granted in favor of defendants with respect to Counts I–VI. Summary judgment on Count VII is denied with respect to Weitzman, but granted in favor of the remaining defendants.

ENTER:

Manish S. Shah
United States District Judge

Date: 3/29/2017