UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT A. TAYLOR, <br><br> Plaintiff, <br><br> v. <br><br> JOSHUA WEITZMAN, <br><br> Defendant. | No. 13 CV 4597 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

After Robert Taylor was acquitted, the investigative alert to arrest him was not canceled. He was arrested a second time based on the stale alert. Taylor sued the police officers involved in the investigation that led to his arrests, and among his claims, he alleged a Fourth Amendment violation for the post-acquittal arrest. Detective Joshua Weitzman, who issued the alert but did not cancel it, now moves for summary judgment based on qualified immunity. The motion is granted.

I. **Legal Standard**

A party moving for summary judgment must show there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All facts and reasonable inferences are drawn in the nonmovant's favor. *Hackett v. City of South Bend*, 956 F.3d 504, 507 (7th Cir. 2020). The movant must show that a reasonable jury could not return a verdict for the nonmoving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), or that the nonmovant has

failed to establish an essential element of his claim and could not carry his burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

## II. Facts

In June 2011, Chicago Police Officer Ricky Hughes obtained a search warrant based on a witness's description of Robert Taylor's unlawful possession of a gun at an apartment. [231] at 2–3.[1] The search that followed turned up a semi-automatic gun. *Id*. at 7. Taylor was not home during the search. [200] ¶ 51; [204] ¶¶ 74–75. According to Detective Joshua Weitzman, he entered an investigative alert into the Chicago police database at Officer Hughes's request, signaling probable cause to arrest Taylor. [200] ¶ 56; [204] ¶¶ 86–87; [300] ¶ 35. According to the Chicago Police Department's investigative alert policy, an alert could only be entered by a Bureau of Investigative Services (BIS) member that was responsible "for follow-up investigation." *Id*. ¶ 14. BIS detectives, like Weitzman, were required to notify supervisors when alerts needed to be updated or canceled. [301] ¶ 15; [183-20] at 35. BIS sergeants and above were responsible for auditing investigative alert files every 28 days to ensure stale alerts were removed from the system. [300] ¶ 20; [301] ¶ 13.

A few days after the search, Taylor went to the police station and was arrested based on the investigative alert. [204] ¶ 90. In November 2011, the arrest was quashed because of an error in the search warrant, and Taylor was found not guilty. *Id*. ¶ 95. The next month, Taylor was arrested again after a traffic stop, based on the

---

[1] Bracketed numbers refer to entries on the district court docket. The facts are taken from the 56.1 statements offered in support of earlier summary-judgment motion practice and the opinions resolving those motions. [200]; [204]; [231]; [300]; [301]; [316].

same investigative alert. *Id.* ¶ 96. He remained in custody for over an hour, until the arresting officers realized Taylor had already been arrested and processed for that alert and let him go. [200] ¶ 61. At some point during the mix-up, Weitzman was contacted. [204] ¶ 97. There is a material dispute of fact as to Weitzman's responsibility for canceling the investigative alert. [300] ¶ 40; [231] at 23–24. Another detective eventually canceled it in January 2012. [300] ¶ 47.

Taylor sued the City of Chicago and the individual police officers involved in the search of his apartment, his arrest on gun charges, and his later arrest after his acquittal. [94]. Taylor and the individual defendants—officers Ricky Hughes, Joshua Weitzman, Kevin Johnson, Russell White, Kenneth Yakes, Shawn Pickett, Richard Peck, Thomas Lieber, Scott McWilliams, and Yolanda Collier—moved for summary judgment on Taylor's § 1983 and malicious prosecution claims. [185]; [190]. The officers briefed a qualified immunity defense for Taylor's first arrest. [186] at 22. Taylor responded that the individual defendants waived any qualified immunity defense with respect to Taylor's second arrest. [199] at 9, 14. The officers replied that their qualified immunity analysis for the first arrest extended to Taylor's second arrest. [215] at 12, n.7. The officers also argued that issuing an investigative alert did not amount to a constitutional violation, and therefore Officer Hughes and Detective Weitzman were protected by qualified immunity. *Id.* at 14. Summary judgment was granted in favor of each defendant on all counts except Weitzman, because Taylor suffered a constitutional injury when he was arrested a second time without probable cause, and there was a material dispute of fact as to Weitzman's responsibility for

3

canceling the alert. [231] at 23–24, 27. In resolving the first motion for summary judgment, I did not address Weitzman's qualified immunity defense to the second arrest. [231].

Taylor and the City of Chicago then moved for summary judgment on Taylor's municipal claim that the City's investigative alert policy was unconstitutional. [287]; [290]. The City's motion for summary judgment was granted because Taylor's evidence amounted to a one-time administrative failure. [316]. In the second round of summary judgment motions, Weitzman, the only remaining individual defendant in the case, also moved for summary judgment based on qualified immunity. [279]. I denied his request but noted that there could be good cause to allow such a motion after the *Monell* claims had been addressed. [281]. After the ruling on municipal liability, Weitzman re-raised the issue of qualified immunity, and I ordered briefing. [318].

### III. Analysis

#### A. Waiver

"[W]aiver is the intentional relinquishment or abandonment of a known right." *Smith v. GC Services Limited Partnership*, 907 F.3d 495, 499 (2018) (citations omitted). Arguments that are skeletal or raised in reply briefs for the first time may be waived. *Hernandez v. Cook County Sheriff's Office*, 634 F.3d 906, 913 (7th Cir. 2011). "The underlying concern is to ensure that the opposing party is not prejudiced by being denied sufficient notice to respond to an argument." *Id*. Weitzman, along with the individual defendants now dismissed from this case, asserted a qualified

4

immunity defense in their first summary judgment brief. [186] at 22. In their reply, the defendants explained that the defense applied to Taylor's second arrest, which was based on the same investigative alert as the first arrest, and that issuing an investigative alert did not amount to a constitutional violation. [215] at 12, n.7, 14. While the immunity arguments with respect to Taylor's second arrest were underdeveloped, the defendants' "opening brief argument supplied adequate notice" to Taylor that they "were raising qualified immunity from the beginning of the case." *Hernandez*, 634 F.3d at 913–14. Taylor received more notice than the plaintiffs in *Maul v. Constan*, 928 F.2d 784, 785, where qualified immunity was not argued during pretrial or trial, and *Aponte v. City of Chicago*, 2010 WL 2774095, at *4, n.5 (N.D. Ill. 2010), where qualified immunity was only raised in defendants' answer to the complaint. Here, the individual police officers raised and briefed a qualified immunity argument. Taylor was not misled about their intent to use this defense. The issue was not waived.

Furthermore, "the issue of qualified immunity is a legal question for the trial court, not the jury," *Maltby v. Winston*, 36 F.3d 548, 554 (7th Cir. 1994) (citation omitted), and "should be resolved at the earliest possible stage in litigation." *Id.* at 554, n.6 (citation omitted). In the first memorandum opinion and order, [231], I did not address the issue. Taylor suffers no prejudice from addressing it now. No trial has been scheduled (and given the current public health emergency, a trial is not likely to be feasible any time soon) and the motion is based on facts that were developed in earlier rounds of litigation. Because a trial date is uncertain and qualified immunity

5

should be resolved as early as possible, there is good cause to consider the motion now, before the parties are put to the expense of trial preparation.

### B. Qualified Immunity

Qualified immunity protects government officials from civil liability under § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a qualified immunity defense is raised, the burden shifts to the plaintiff to show 1) a violation of a constitutional right and 2) that the constitutional right was clearly established at the time of the alleged violation. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).[2] There are two ways to prove the second part. First, a plaintiff can identify a reasonably analogous case that articulates the right at issue and concerns a similar set of facts. *Id.* (citation omitted). The case need not be identical but must be "some settled authority" that would put a reasonable officer on notice that his actions violated the Constitution. *Id.* at 702 (citing *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). Alternatively, a plaintiff can demonstrate that the violation was so obvious that any reasonable person would have recognized it violated the law. *Id.* at 701 (citation omitted). Under either approach, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 702 (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)) (cleaned up). Finally, the right must be viewed "in light of the specific context of the case, not as a

---

[2] These two elements can be addressed in any order. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

broad general proposition," which requires examining "whether the violative nature of *particular* conduct is clearly established." *Mullenix*, 136 S. Ct. at 308 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)).

Taylor argues he had a constitutional right to be free from arrest without probable cause. *See Burritt v. Ditlefsen*, 807 F.3d 239, 250 (7th Cir. 2015). But this ignores Weitzman's specific conduct and defines the right too broadly. *See Ashcroft*, 563 U.S. at 742 ("The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established."). Weitzman's characterization of the issue—whether he was on notice of potential civil liability—is imprecise too. The qualified immunity test asks whether the official's conduct was clearly unconstitutional. The particular conduct here is Weitzman's failure to cancel the investigative alert and the issue is whether that conduct violated a clearly established constitutional right not be seized on a stale alert.

There is no reasonably analogous case that would have put Weitzman on notice that failing to cancel an investigative alert violated the Constitution. The concern about law enforcement failing to update information was raised as early as 1985, without clearly settling it as a constitutional issue. *See United States v. Longmire*, 761 F.2d 411, 420 (7th Cir. 1985) ("Unreasonable delays by issuing officers in updating the information contained in police bulletins or flyers will not be sanctioned by this court. Such delays may render illegal stops and searches pursuant to those bulletins."); *see also Banks v. Fuentes*, 545 Fed.App'x 518, 520–21 (7th Cir. 2013)

7

(comparing investigative alerts to police bulletins). Yet, even if Weitzman had heeded the warning issued in *Longmire*, he would still not be on notice that his conduct violated the Constitution. While *Longmire* states that unreasonable delays will not be sanctioned, the case does not rule on the constitutionality of such conduct. *See* 761 F.2d at 420. At most, it suggests that delays "may" result in illegal arrests, *id.*, not that acts of unreasonable delays are unconstitutional. It also puts the onus on arresting officers to check the staleness of bulletins (or here, investigative alerts), not just the issuing officer. *Id.* An officer reading *Longmire* would see a warning about illegal arrests resulting from delays in updating bulletins, but would not understand that the failure to cancel an alert violated the constitution. Such an officer could reasonably believe that an audit system and the arresting officers' obligation to check for staleness would eliminate any constitutional obligation on the initiating officer's part to cancel the alert.

Nor was Weitzman's conduct so outrageous that any reasonable person would have recognized it as unlawful. *See Leiser*, 933 F.3d at 704. For example, similar conduct did not trigger the exclusionary rule, where intentional conduct that is patently unconstitutional warrants the suppression of evidence. *See Herring v. United States*, 555 U.S. 135, 143 (2009). Like applying the exclusionary rule, withholding qualified immunity is intended to deter misconduct and hold officers accountable for clearly unconstitutional conduct. *See id.* at 140–41; *see also Harlow*, 457 U.S. at 819. As of 2009, Weitzman was on notice that negligent mistakes made by law enforcement do not trigger the exclusionary rule. *Herring,* 555 U.S. at 144. In

other words, a negligent mistake is not the type of flagrant or deliberative police misconduct that requires judicial deterrence. *Id.* In *Herring*, the mistake made was similar to the one Weitzman made—an outdated warrant in a computer database led to an unlawful arrest. *Id.* at 138.[3] The negligence underlying the mistake distinguished it from flagrantly unconstitutional conduct. *Id.* at 140. "If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries, exclusion would be justified." *Id.* at 146.[4] In Taylor's case, Weitzman issued the investigative alert and failed to update it. [200] ¶ 56; [204] ¶¶ 86–87; [300] ¶¶ 35, 47. Assuming he knew about the investigative alert policy, Weitzman knew he had follow-up responsibilities, but also that the alert would be canceled within 28 days under the audit policy. [300] ¶¶ 14, 20; [301] ¶ 13.[5] Notwithstanding the material dispute about Weitzman's responsibility for cancelling the alert, at most, this was an instance of "isolated negligence" like in *Herring*, not a reckless or deliberate inaction. 555 U.S. at 137. Thus, Weitzman's mistake was not so egregious to defeat a qualified immunity defense. In 2011 (and even now) there was no existing precedent of a clearly established constitutional right to be free from arrest based on stale information that would have put Weitzman on notice that his

---

[3] The Court accepted the parties' assumption that there had been a Fourth Amendment violation. *Herring v. U.S.*, 555 U.S. 135, 139 (2009).

[4] The dissent in *Herring* warned that in the modern world of policing, where the use and influence of electronic databases has grown dramatically, "[i]naccuracies in expansive, interconnected collections of electronic information raise grave concerns for individual liberty." *Herring*, 555 U.S. at 155 (Ginsburg J., dissenting).

[5] Even if Weitzman violated CPD's investigative alert policy, that by itself does not establish a constitutional violation.

9

failure to cancel an alert was unconstitutional.[6] Taylor fails to carry his burden to defeat Weitzman's qualified immunity defense.[7]

### IV. Conclusion

Weitzman's motion for summary judgment, [319], is granted. Taylor's § 1983 and state law claims against all individual defendants have been denied, [231], as well as Taylor's *Monell* claim against the City of Chicago. [316]. The Clerk shall enter final judgment in favor of all defendants on all claims. Terminate civil case.

ENTER:

                                                     Manish S. Shah
                                                   United States District Judge

Date: June 30, 2020

---

[6] Taylor argues that because there is a dispute of material fact as to Weitzman's responsibility for cancelling the alert, summary judgment is inappropriate, and Weitzman's motion amounts to a motion to reconsider my ruling. A genuine dispute of fact about whether a clearly established constitutional right was violated precludes summary judgment on the basis of qualified immunity. *Isby v. Brown*, 856 F.3d 508, 530 (7th Cir. 2017). But here, the issue is whether there even was a clearly established constitutional right—which is a question of law independent of the factual dispute.

[7] Because qualified immunity shields Weitzman, I do not reconsider the question of Weitzman's potential liability under the threshold elements for false arrest—an issue on which I denied summary judgment. [231] at 23–24, 27.